UNITED STATES DISTRICT COURT

DISTRICT OF NEW MEXICO

MICHELLE MONTOYA,  CANDACE
SEAVERNS, JOSEPH SEAVERNS, SEAVERNS
FAMILY LIVING TRUST, SAM ARTHUR,
TAMARA FRASER, GREGORY LUNGSTRUM,
JUDITH BUCKER-LUNGSTRUM, DANIEL
JOSLIN, VICKI JOSLIN, TOBIN DOLAN,
LYDIA DOLAN, DOROTHY JONES, TANGEE
DOLAN, NORMA NIX, MARY ANN FISHER,
JAMES NIX, ANTHONY BROTHERS, YVETTE
BROTHERS, KENNETH BACA, MARIA
ELENA BACA, DUANE OLLINGER, LEON
MARTINEZ, JOHN ELLIS III, LYNNITA
ELLIS, MANUAL CHACON, MARY CHACON,
CARLOS BUSTOS, ELIZABETH BUSTOS,
ELIZABETH JONES, DEBORAH LEYBA,
WILLIAM ZAMORA, BENSON DURUAKU,
ALVIN MARTINEZ, WILLIAM ROBINSON,

     *Plaintiffs*,

  v.

FEDERAL EMERGENCY MANAGEMENT
AGENCY; NATIONAL RESOURCES
CONSERVATION SERVICES; ANGELA
GLADWELL, in her official capacity as
Administrator of the Federal
Emergency Management Agency,

     *Defendants*.

No. _____

**COMPLAINT FOR DECLARATORY & INJUNCTIVE RELIEF**

## INTRODUCTION

1.     Plaintiffs are individuals damaged by the Hermit's Peak and Calf Canyon Fires. Plaintiffs submitted claims through the Federal Emergency Management Agency's ("FEMA") Hermit's Peak/Calf Canyon Claims Office pursuant to the "Hermit's Peak/Calf Canyon Fire Assistance Act ("HPFAA" or the "Act") (Pub. L. 117-180, 136 State. 2168 (2022)). The purpose of the HPFAA is to expedite payment victims of the Fire.

2.     FEMA and the U.S. Department of Homeland Security ("DHS") have engaged and continue to engage in systematic failures and misconduct in administering the claims process established under the HPFAA, which manifest in three distinct ways.

3.     First, FEMA has failed and indicated its intent to continue to fail to comply with claim processing requirements and 180-day mandated payment deadlines under the HPFAA. This failure has resulted and will continue to result in delaying Plaintiffs' and other fire victims' desperately needed payments to repair or rebuild their damaged homes and property.

4.      Second, FEMA and National Resources Conservation Service ("NRCS") have also refused to comply with New Mexico and federal laws by issuing HPFAA payments directly to claimants, instead of directing payments to New Mexico Supreme Court-approved IOLTA accounts when directed by client and attorney.

5.      Third, FEMA and NRCS have and continue to engage in unauthorized contact with Plaintiffs and other represented parties, urging them to terminate representation. FEMA and NRCS have also presented settlement offers without involvement of counsel, indicating prompt payment if they proceeded without counsel.

6.      Plaintiffs seek declaratory, injunctive, and other appropriate reliefs against FEMA and NRCS to (1) comply with the 180-day payment deadline mandated under section 104(d)(1)(A)(i) of the HPFAA; (2) appoint an experienced and competent claims administrator; (3) direct payments to represented claimants' attorneys' IOLTA accounts; and (4) prohibit unauthorized contact or communication with represented claimants.

## JURISDICTION & VENUE

7.    This Court has jurisdiction under 28 U.S.C. § 1331 because this is a civil action arising under the laws of the United States, and 28 U.S.C. §§ 1346 and 2671 because a United States agency is a defendant.

8.    This Court has jurisdiction under 28 U.S.C. § 1361 because this action seeks to compel an officer or employee of the United States or any agency thereof to perform a duty owed to Plaintiffs.

9.    This Court has jurisdiction under 5 U.S.C. §§ 701–706, and 28 U.S.C. § 2201–2202, because this action is brought by persons adversely affected by agency action, and seeks to right a legal wrong due to agency action as set forth in 5 U.S.C. §§ 701 and 702. Defendant's issuance of the Final Rule (RIN 1660-AB14; 44 CFR 296) (the "Rule") on August 29, 2023, constitutes a final agency action subject to judicial review under 5 U.S.C. §§ 704 and 706. Further, the Rule shows an actual controversy exists between the parties within the meaning of 28 U.S.C. § 2201(a). Accordingly, this Court has jurisdiction to grant declaratory relief, injunctive relief, mandamus relief, and/or other relief pursuant to 5 U.S.C. §§ 701–706, and 28 U.S.C. §§ 2201–2202.

10.    Venue is proper in this Court under 5 U.S.C. § 703 and 28 U.S.C. § 1391(e)(1)(B)–(C) because a substantial part of the events or omissions giving rise to the claim occurred in this judicial district, a substantial part of property that is the subject of the action is situated in this judicial district, and/or Plaintiffs reside in this judicial district.

## PARTIES

11.    Plaintiffs Candace and Joseph Seaverns owned and resided in a single-family home on an approximately three-acre parcel in Sapillo, New Mexico. They lost their home and all personal belongings to the Hermit's Peak Fire, and submitted a claim to FEMA under the HPFAA on or about June 6, 2023.

12.    Plaintiffs Sam Arthur and Tamara Fraser owned and resided in a single-family home in Rociada, New Mexico. The Hermit's Peak Fire destroyed their home and personal possessions. They submitted a claim to FEMA under the HPFAA on or about May 15, 2023.

13.    Plaintiffs Gregory Lungstrum and Judith Bucker-Lungstrum owned The Pecos Wilderness Ranch in New Mexico. The Hermit's Peak Fire destroyed the entire ranch, including their home,

structures, personal possessions, and land. They submitted a claim to FEMA under the HPFAA on or about March 3, 2023.

14.    Plaintiffs Daniel and Vicki Joslin owned and resided in a single-family home in Sapello, New Mexico. The Hermit's Peak Fire destroyed their home and personal possessions. They submitted a claim to FEMA under the HPFAA on or about April 12, 2023.

15.    Plaintiffs Tobin and Lydia Dolan owned and resided in a single-family home in Rociada, New Mexico. The Hermit's Peak Fire destroyed their home and personal possessions. They submitted a claim to FEMA under the HPFAA on or about April 3, 2023.

16.    Plaintiff Dorothy Jones owned a mobile home on land leased from Plaintiffs Tobin and Lydia Dolan in Rociada, New Mexico. The Hermit's Peak Fire destroyed her mobile home and personal possessions. She submitted a claim to FEMA under the HPFAA on or about March 7, 2023.

17.    Plaintiff Tangee Dolan owned and resided in a single-family home in Las Vegas, New Mexico. The Hermit's Peak Fire destroyed her home and personal possessions. She submitted a claim to FEMA under the HPFAA on or about April 3, 2023.

18.    Plaintiff Norma Nix, who owned and resided in a single-family home in Las Vegas, New Mexico, suffered the loss of her home, shed, personal possessions, and beloved cat to the Hermit's Peak Fire. She submitted a claim to FEMA under the HPFAA on or about January 30, 2023.

19.    Plaintiffs Mary Ann Fisher and James Nix owned and resided in a single-family home in Las Vegas, New Mexico. The Hermit's Peak Fire burned their home, vehicles, and personal belongings, which devasted the surrounding fora, exposing their property to erosion and mudslide risks. They submitted a claim to FEMA under the HPFAA on or about January 30, 2023.

20.    Plaintiffs Anthony and Yvette Brothers owned a cabin on an over 30-acre lot in New Mexico. They suffered the loss of the property and personal possessions to the Hermit's Peak Fire, which annihilated the area's vegetation, creating erosion and mudslide risks. They submitted a claim to FEMA under the HPFAA on or about January 11, 2023.

21.    Plaintiffs Kenneth and Maria Elena Baca owned real property in Rociada, New Mexico with a cabin, trailer, and shed. The

Hermit's Peak Fire destroyed all structures and personal possessions on the property. They submitted a claim to FEMA under the HPFAA on or about February 2, 2023.

22.    Plaintiff Duane Ollinger owned 1,040 acres of land in Montezuma Hot Springs, New Mexico. The Hermit's Peak Fire ravaged 90 percent of his land, devastating the area's vegetation, creating erosion and mudslide risks, and resulting in wildlife fatalities and personal property damage (including a tractor). He submitted a claim to FEMA under the HPFAA on or about March 21, 2023.

23.    Plaintiffs Leon Martinez, Zakariah Ezekiel Martinez, Elyana Delia Martinez, and Delia Martinez owned real property used for agriculture in Rociada, New Mexico. The Hermit's Peak Fire destroyed structures, such as fencing, retaining walls, and roads, along with land and trees critical for crops cultivation and livestock. The property is now susceptible to erosion and mudslides. He submitted a claim to FEMA under the HPFAA on or about May 2, 2023.

24.    Plaintiffs John Ellis III and LynNita Ellis owned and resided in a single-family home on a parcel over six-acres in Las Vegas, New Mexico. The Hermit's Peak Fire damaged their home and destroyed

their property, including trees and vegetation creating erosion and mudslide risks. They submitted a claim to FEMA under the HPFAA on or about May 30, 2023.

25.    Plaintiffs Manual and Mary Chacon owned and resided in a single-family home on an approximately 90-acre parcel in Rociada, New Mexico. The Hermit's Peak Fire damaged their home, and destroyed two barns and their property, including over half the trees and vegetation creating erosion and mudslide risks. They submitted a claim to FEMA under the HPFAA on or about January 18, 2023.

26.    Plaintiffs Carlos and Elizabeth Bustos owned real property in Guadalupita, New Mexico. The Hermit's Peak Fire damaged their property, destroying trees and vegetation, which in turn created erosion and mudslide risks. They submitted a claim to FEMA under the HPFAA on or about May 23, 2023.

27.    Plaintiffs Nancy Martinez and Richard Martinez owned real property in Rociada, New Mexico. The Hermit's Peak Fire damaged their property, destroying trees and vegetation, which in turn created erosion and mudslide risks. They have also suffered flood damage to

structures on their property. They submitted a claim to FEMA under the HPFAA on or about January 30, 2023.

28.    Plaintiff Elizabeth Jones owned real property on a two-acre parcel in San Miguel, New Mexico. The Hermit's Peak Fire burned trees and vegetation creating erosion and mudslide risks. They submitted a claim to FEMA under the HPFAA on or about May 5, 2023.

29.    Plaintiff Deborah Leyba owned real property in Guadalupita, New Mexico on a 15-acre parcel of land. The Hermit's Peak Fire burned trees and vegetation creating erosion and mudslide risks. They submitted a claim to FEMA under the HPFAA on or about May 4, 2023.

30.    Plaintiff William Zamora owned two real properties in Rociada, New Mexico. The Hermit's Peak Fire damaged a single-family home on one of the properties, while on the second, the Fire destroyed trees and vegetation, increasing the likelihood of erosion and mudslides. He submitted a claim to FEMA under the HPFAA on or about April 28, 2023.

31.    Plaintiff Benson Duruaku owned real property in Santa Fe Mountain Ranch, New Mexico used for producing lumbar. The Hermit's

Peak Fire burned and destroyed all the trees on the property creating erosion and mudslide risks. Plaintiff submitted a claim to FEMA under the HPFAA on or about February 9, 2023.

32.    Plaintiff Alvin Martinez owned real property in Rociada, New Mexico. The Hermit's Peak Fire damaged his property. He submitted a claim to FEMA under the HPFAA on or about April 17, 2023.

33.    Plaintiff William Robinson owned real property in Las Vegas, New Mexico on a 15-acre parcel of land. The Hermit's Peak Fire burned trees and vegetation creating erosion and mudslide risks. He submitted a claim to FEMA under the HPFAA on or about February 21, 2023.

34.    Plaintiff Michelle Montoya owned real property in Rociada, New Mexico. The Hermit's Peak Fire destroyed her home, trees and vegetation creating erosion and mudslide risks.

35.    Defendant FEMA is an executive agency of the United States government, and bears responsibility in whole or part for the acts or omissions complained herein, including promulgating the Rule. Under the HPFAA, FEMA is directed to receive, process, and pay claims

in accordance with the HPFAA.[1] Mr. Adrian Sevier is Chief Counsel of FEMA. As the principal legal officer for FEMA, Mr. Sevier is legal advisor to the FEMA Administrator and FEMA senior leadership, serves as the agency "Ethics Official", and is responsible for the direction and management of the Office of Chief Counsel. He is ultimately responsible for the professional conduct of FEMA's Hermit's Peak/Calf Canyon Claims Office ("HPCC" or the "Claims Office") Claims Office in New Mexico.

36.    Defendant NRCS is a federal agency under the U.S. Department of Agriculture ("USDA"). The NRCS/USDA is operating under a "Memorandum of Understanding" with FEMA/DHS dated May 4, 2023:

> The purpose of this Memorandum of Understanding (MOU or Agreement) is to coordinate activities between the Federal Emergency Management Agency (FEMA) and the Natural Resources Conservation Service (NRCS) (individually a Party or together, the Parties) related to compensation to persons that suffered injuries from the Hermit's Peak/Calf Canyon Fire in New Mexico.

---

[1]    *See* Hermit's Peak Fire Assistance Act, Pub. L. No. 117-180, § 104(a)(2), 136 Stat. 2168, 2170 (2022).

37.    The NRCS/USDA contract with FEMA/DHS includes the NRCS contacting claimants to prepare conservation/restoration plans under the HPCC and make settlement offers to claimants.

38.    Defendant Angela Gladwell, in her official capacity, is the Director of the Claims Office in New Mexico. Defendant Gladwell signed the MOU with the NRCS on behalf of FEMA. She is the principal officer in charge of FEMA's Claims Office in New Mexico, directing represented claimants to terminate their representation and accept the NRCS valuation without advice of counsel.

**BACKGROUND**

## 1. The federal government enacted the HPFAA to promptly compensate victims of the Hermit's Peak Fire.

39.    On April 6, 2022, the U.S. Forest Service initiated a prescribed burn on federal land in the Santa Fe National Forest in San Miguel County, New Mexico. The prescribed burn got out of control, resulting in a wildfire that spread to adjacent, non-federal land—the incident known as the Hermit's Peak Fire.[2]

---

[2]    *Id.*, § 102(a)(1)–(4), 136 Stat. at 2168.

40.   The President declared the Hermit's Peak Fire "a major disaster," and Congress acknowledges its impact, recognizing forced evacuations, and damage or destruction of state, local, tribal, and private property in Colfax, Mora, and San Miguel counties in New Mexico.[3]

41.   Congress determined that "the United States should compensate the victims of the Hermit's Peak Fire."[4]

42.   On September 30, 2022, Congress enacted—and the President signed—the HPFAA.[5]

43.   The HPFAA's stated purposes are "to compensate victims of the Hermit's Peak/Calf Canyon Fire, for injuries resulting from the fire" and "to provide for the expeditious consideration and settlement of claims for those injuries."[6]

---

[3]   *Id.*, § 102(a)(5)–(6), (9), 136 Stat. at 2168–69.

[4]   *Id.*, § 102(a)(10), 136 Stat. at 2169.

[5]   Hermit's Peak/Calf Canyon Fire Assistance, 88 Fed. Reg. at 59,731.

[6]   Hermit's Peak Fire Assistance Act, Pub. L. No. 117-180, § 102(b)(1), 136 Stat. 2168, 2169 (2022).

44.    Congress allocated $3.95 billion to compensate victims of the Hermit's Peak Fire under the HPFAA.[7]

45.    On or about August 29, 2023, FEMA issued its Final Rule and regulations for the administration of the claims process.[8]

## 2.    The HPFAA entitles claimants to compensation within 180-days of filing a Notice of Loss.

46.    The HPFAA states that claimants are entitled to "payment under this Act" for "actual compensatory damages."[9]

47.    The Claims Office was created to "receive, process, and pay claims in accordance with this Act."[10]

---

[7]    FEMA, FAQ: Hermit's Peak/Calf Canyon Fire Assistance Act Final Rule (Aug. 28, 2023), https://www.fema.gov/fact-sheet/faq-hermits-peakcalf-canyon-fire-assistance-act-final-rule#:~:text=The%20Hermit%27s%20Peak%2FCalf%20Canyon,major%20concerns%20from%20the%20community.

[8]    44 CFR 296, also 88 FR 59730

[9]    Hermit's Peak Fire Assistance Act, Pub. L. No. 117-180, § 104(c)(3), 136 Stat. 2168, 2170 (2022).

[10]    Hermit's Peak Fire Assistance Act, Pub. L. No. 117-180, § 104(c)(3), 136 Stat. 2168, 2170 (2022).

48.    The Office shall be funded from funds made available to the Administrator for carrying out processing and paying claims under the HPFAA.

49.    The HPFAA expressly states that "[n]ot later than 180 days after the date on which a claim is submitted under this Act, the Administrator shall determine and fix the amount, if any, to be paid for the claim."[11]

50.    Accordingly, FEMA must pay claims within 180-days of the claim being submitted, but FEMA has failed to do so.

51.    Plaintiffs submitted their claims to FEMA between January and June of 2023, making many of the claims submitted well-past the 180-days from submission and the deadline for the remaining claims is quickly approaching in December.

52.    As of the date of filing this complaint FEMA has not issued a settlement offer to any claim submitted by Plaintiffs.

---

[11]    Hermit's Peak Fire Assistance Act, Pub. L. No. 117-180, § 104(c)(3), 136 Stat. 2168, 2171 (2022).

53.    Rather, FEMA has stated that the Claims Office has not been properly staffed and the 180-days would not start until claims were "acknowledged."

54.    FEMA, in its Final Rule, also stated that it "does not believe a Notice of Loss can be submitted until it has been reviewed for sufficiency and receipt has been acknowledged by FEMA."[12]

55.    On October 17, 2023, FEMA held an Advocate's Meeting to discuss the claims process under the HPFAA. FEMA Senior Counsel Jacob Payne attended the meeting and confirmed that (1) FEMA had not issued a settlement offer to a single claimant represented by an attorney; (2) FEMA still had not retained the necessary experts to review and evaluate Proof of Losses with real property damage; (3) FEMA had not started reviewing Proof of Losses with real property damages; and (4) FEMA *did not intend* to comply with the 180-day payment deadline mandated under the HPFAA for claims with certain real property damage.

---

[12]    FEMA, FAQ: Hermit's Peak/Calf Canyon Fire Assistance Act 44 CFR 296, 88 FR at 59761.

### 3.  FEMA improperly refuses to pay claims to New Mexico approved IOLTA accounts.

56.    Claimants under the Act have the right to be represented by legal counsel.[13]

57.    The Federal Tort Claims Act ("FTCA") is incorporated into the HPFAA for purposes of setting the payment of attorney's fees under the HPFAA. Under the FTCA and upon information and belief, the standard practice is to pay settlements via wire transfer to the New Mexico attorney's Supreme Court-approved IOLTA account. Plaintiffs have duly notified FEMA and USAO/DNM of this standard practice. To affirm the regular practice of funding settlements through IOLTA accounts—as opposed to direct payments to claimants—Plaintiffs have requested pertinent records from FEMA and USAO/DNM through the Freedom of Information Act ("FOIA").

58.    FEMA has asserted, in its Final Rule, that disbursing HPFAA-awarded funds to an attorney's IOLTA account for further handling constitutes an impermissible "assignment" of the claim, as prohibited by "the regulations" and the Anti-Assignment Act (31 U.S.C.

---

[13]    *See e.g.*, FEMA Final Rule, 44 CFR 296 at 61.

§ 3727), 31 U.S.C. section 3727. *See* 88 Fed. Reg. No. 166 at 59742, 59747.

59.    In its letter to Plaintiffs' counsel, dated October 2, 2023, FEMA reiterated that 44 C.F.R. § 296.14 "prohibit[s] the assignment of claims and the assignment of the right to receive compensation from the Claims Office," and it "does not have the authority to assign claims or payments to third party representatives."

60.    FEMA's position is wrong and will cause further delays in payments to Plaintiffs and other represented claimants.

**4.    FEMA and NRCS engage in unauthorized communications with represented claimants and induce them to separate from their attorneys for an expedient resolution of their claims.**

61.    FEMA acknowledges that claimants, including Plaintiffs, are entitled to representation by legal counsel in claims submitted under the HPFAA.

62.    FEMA, the USDA, the NRCS, the Department of Homeland Security and their government attorneys are ethically bound by 28 U.S.C. § 530B, entitled "Ethical Standards for attorneys for Government." The statute provides "[a]n attorney for the Government

shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State." 28 U.S.C. § 530B(a).

63.    Federal law mandates FEMA and NRCS to communicate with represented claimants exclusively through their legal counsel.

64.    Federal law prohibits FEMA and NRCS them from making settlement offers, claims, and claim process to represented claimants directly without involving their counsel.

65.    FEMA and NRCS representatives have communicated directly with claimants whom FEMA and NRCS knows are represented by legal counsel. NRCS representatives have urged claimants to terminate their legal representation and submit their claims to FEMA for payment without advice of counsel at a substantially discounted value.

66.    FEMA and NRCS have also advised claimants that their claim will be expedited if they are not represented by counsel. NRCS representatives have been directed not to perform assessments on claimants' real property if attorney representatives are present for

purposes of delay and to avoid prompt adjudication of claims.
Inexplicably, the NRCS representatives are refusing to perform site
assessments (or site inspections) if an attorney representative is
present, which, results in a delay in the compensation of innocent
victims.

67.    Plaintiff Michelle Montoya was contacted by FEMA
personnel pressuring her to terminate her attorneys and offering to pay
Ms. Montoya's damages at a discounted value. Ms. Montoya refused,
but FEMA continued to contact her so frequently that Ms. Montoya
blocked the number. After blocking the number, an old friend who
worked at the Claims Office texted Ms. Montoya's personal cell phone
saying, "call me, it's an emergency." When Ms. Montoya returned the
call, her friend said that she could get her money immediately if she
fired her attorneys.

68.    As of the filing of this action, neither FEMA nor NRCS have
engaged with Ms. Montoya's counsel and have refused to timely process
Ms. Montoya's claim as required under the HPFAA. FEMA and NRCS
have made it clear that they refuse to coordinate with claimants'
attorneys and insisted on only direct communications with claimants

without their counsel. This pattern of conduct reveals a deliberate strategy of evading property assessments associated with HPFAA claims unless claimants communicate directly with FEMA and NRCS and without counsel.

69.    On September 7, 2023, undersigned counsel wrote a letter to FEMA representative Angela Gladwell detailing the concerns regarding the claims process and requesting FEMA not contact or communicate with represented claimants outside the presence of their counsel.

## COUNT I
## (Declaratory Relief for Violation of APA; 5 U.S.C. § 706)

70.    All foregoing paragraphs of this Complaint are realleged and incorporated herein by reference.

71.    The APA requires courts to "hold unlawful and set aside" agency action that is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right."[14]

72.    FEMA and NRCS are "agencies" under the Administrative Procedures Act ("APA").

---

[14]    5 U.S.C. § 706(2)(A).

73.    The Rule constitutes "[a]gency action made reviewable by statute and final agency action for which there is no other adequate remedy in a court."[15]

74.    The Rule is not in accordance with the law because the HPFAA entitles claimants to be paid no later than 180 days after the date on which a claim is submitted under the HPFAA.

75.    FEMA's position that the mandatory 180-days deadline would not start until claims were "acknowledged" is in excess of FEMA's statutory jurisdiction, authority, and limitations. The HPFAA requires FEMA to determine and fix the amount, if any, to be paid for the claim within 180 days after the date on which a claim is submitted under this Act.

76.    FEMA has also taken this position in its Final Rule that states it "does not believe a Notice of Loss can be submitted until it has been reviewed for sufficiency and receipt has been acknowledged by FEMA."

---

[15]    5 U.S.C. §§ 551(4), (13), 704.

77.    The Rule harms Plaintiffs and other similarly situated Hermit's Peak Fire victims by depriving them of timely compensation to which they are entitled under the HPFAA.

78.    By choosing to categorically delay processing and paying claims FEMA exceeds its statutory authority and infringes on Congress's power to enact legislation and allocate funds for designated purposes.

79.    FEMA's reason that the Claims Office was not properly staffed is not justified. The HPFAA established the Office and allocated funds for the Administrator to efficiently process and pay claims under the Act.

80.    Plaintiffs request this Court to declare, under 28 U.S.C. § 2201, that the HPFAA's 180-day deadline begins from the date a claimant submits his/her claim, not when FEMA "acknowledges" the claim.

81.    Plaintiffs requests this Court to declare, under 28 U.S.C. § 2201, that FEMA must immediately pay Plaintiffs' claims that exceed the 180-day deadline from the date of submission.

82.    Plaintiffs seek this Court to declare, under 28 U.S.C. § 2201, that FEMA must determine and settle the amount payable for a claim within 180 days following the claim's submission under the HPFAA.

83.    Plaintiffs seek this Court to declare, under 28 U.S.C. § 2201, that FEMA must appoint an experienced and competent claims administrator to ensure timely processing and payment of claims under the HFPAA.

## COUNT II
**(Violation of APA; 5 U.S.C. § 706—Arbitrary, Capricious, and Abuse of Discretion Refusing to Pay Claims to IOLTA Accounts)**

84.    All foregoing paragraphs of this Complaint are realleged and incorporated herein by reference.

85.    The HPFAA provides for attorneys' fees within the limitations of the FTCA.

86.    The HPFAA is silent on the mechanism of payment and assignments to attorneys, although the Act contemplates that claimants will use the services of attorneys.

87.    On or about August 29, 2023, FEMA issued its Final Rule and regulations for the administration of the claims process (44 CFR 296; *see also* 88 FR 59730). The Final Rule precludes payment to

claimants and their counsel: "Assignment of claims and the right to receive compensation for the claims under this Act is prohibited and will not be recognized by FEMA." 44 CFR 296.14, also 88 FR 59779. FEMA has construed this prohibition to extend to the assignment of the right to receive payment for claims. FEMA intends to make the Act's compensation payments only to claimants.

88.    The Final Rule at § 296.21 Allowable damages, (b) Exclusions, states: "…attorney's fees and agents' fees incurred in prosecuting a claim under the Act … are not recoverable from FEMA. The cost to a claimant of prosecuting a claim under the Act does not constitute compensatory damages and is not recoverable from FEMA, except as provided in § 296.31(b)." 44 CFR 296.21(b), also 88 FR 59779.

89.    FEMA Final Rule, 44 CFR 296, at § 9, Comments on § 296.14 Assignments, *see also* 88 FR 59742. FEMA's general counsel have misconstrued seminal U.S. Supreme Court case law, U.S. Circuit Court case law and the standard practice of payments under the FTCA making payments directly into the clients/attorneys' IOLTA accounts.

90.     The APA requires courts to "hold unlawful and set aside" agency action that is "arbitrary," "capricious," or an "abuse of discretion."[16]

91.     The Rule is arbitrary, capricious, and an abuse of discretion: FEMA mischaracterizes the Anti-Assignment Act, 31 U.S.C. § 3727, and deviates from longstanding practice in FTCA litigation to pay judgments and settlements jointly to a claimant and his/her attorney for deposit into the attorney's trust account for disbursement under the terms of the applicable retainer agreement between them.

92.     FEMA's arbitrary and capricious abuse of discretion harms Plaintiffs and other represented claimants by delaying and depriving them of compensation due under the HPFAA.

93.     By promulgating the Rule, without a proper factual or legal basis, Defendants have acted arbitrarily and capriciously, abused their discretion, acted contrary to law, and violated the APA. The Rule is therefore unlawful and should be set aside under 5 U.S.C. § 706(2)(A).

---

[16]     5 U.S.C. § 706(2)(A).

27

94.    Plaintiffs seek this Court to declare, under 28 U.S.C. § 2201, that under federal and state law HPFAA claimants may direct that the payments of their settlements may be made into a New Mexico Supreme Court approved IOLTA account, which are not "assignments" in violation of the Anti-Assignment Act (31 U.S.C. § 3727).

95.    Plaintiffs seek this Court to declare that the Anti-Assignment Act, 31 U.S.C. § 3727, does not preclude payment of awards to claimants and their attorneys, and Defendants' interpretation is in inconsistent with federal and New Mexico laws, which require FEMA to jointly pay awards upon direction by the claimants.

96.    Make such other and further declarations of law consistent with the New Mexico Code of Professional Conduct, the Anti-Assignment Act (31 U.S.C. § 3727), the APA, 5 U.S.C.A. § 500, the FTCA as incorporated into the HPCC, 28 U.S.C. § 530B(a), and the New Mexico Supreme Court approved IOLTA.

## COUNT III
### (Declaratory Relief for Violation of APA; 5 U.S.C. § 706 – Unauthorized Contact with Represented Claimants)

97.    All foregoing paragraphs of this Complaint are realleged and incorporated herein by reference.

98.    FEMA is an "agency" under the APA.

99.    The APA, 5 U.S.C.A. § 500, and common law, codify the fundamental right of persons to be represented by legal counsel in proceedings before federal agencies. It follows that an agency is required to communicate only with a represented person through his/her counsel.

100.   The provisions of 5 U.S.C. § 500, et seq., were enacted to enable, as far as possible, persons to be represented by any attorney in good standing in matters before federal agencies and to require the agencies to deal with the representative.

101.   Section 500(f) is essentially a codification in the APA of the "no contact" rule applicable to lawyers pursuant to the ABA and New Mexico Rules of Professional Conduct.

102.   In addition, 28 U.S.C. § 530B, entitled "Ethical Standards for attorneys for Government," provides "[a]n attorney for the Government shall be subject to State laws and rules, and local Federal court rules, governing attorneys in each State where such attorney

engages in that attorney's duties, to the same extent and in the same manner as other attorneys in that State."[17]

103.    New Mexico law prohibits direct contact with a represented party. ABA Model Rule 4.2, adopted by the New Mexico Supreme Court as New Mexico Rule of Professional Conduct 16-402, NMRA Rule 16-402, sets forth the "no contact" rule prohibiting communication with a person known to be represented by counsel without authorization or court order.

104.    When governmental agencies adjudicate or make binding determinations of individuals' legal rights, it is imperative that those agencies follow the procedures traditionally used in the judicial process. The "no contact rule" is clearly such a procedure. Making settlement offers through counsel is required by that rule and is a critical safeguard designed to ensure claimants are fully informed of the settlement's implications.

105.    ABA Model Rule 4.2, adopted by the New Mexico Supreme Court as New Mexico Rule of Professional Conduct 6-402, provides as follows:

---

[17]    28 U.S.C. § 530B(a).

In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

106.  The Commentary to the Rule provides in part as follows:

[1] This Rule contributes to the proper functioning of the legal system by protecting a person who has chosen to be represented by a lawyer in the mater against possible overreaching by other lawyers who are participating in the matter, interference by those lawyers with the client-lawyer relationship and the uncounselled disclosure of information relating to the representation.
…
[3] The Rule applies even though the represented person initiates or consents to the communication. A lawyer must immediately terminate communication with a person if, after commencing communication, the lawyer learns that the person is one with whom communication is not permitted by this Rule.
…
[4] ... A lawyer may not make a communication prohibited by this Rule through the acts of another.

107.  ABA Model Rule 4.2, adopted by the New Mexico Supreme Court as New Mexico Rule of Professional Conduct 6-402, provides as follows:

In representing a client, a lawyer shall not communicate about the subject of the representation with a person the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so by law or a court order.

108.  Section 500(f) of the APA essentially makes the "no contact rule" that applies to lawyers, also applicable to federal agencies and

their employees, as a matter of fairness to persons dealing with federal agencies, due process and sound public policy. Fairness requires that settlement communications and settlement offers be made with advice of counsel and through counsel."

109.   Upon information and belief, it is the official policy of FEMA to seek to dissuade claimants from being represented by counsel, and to interfere with the attorney-client relationship, including making settlement offers to represented clients without their counsel's involvement. It is apparently FEMA's and NRCS's practice to openly urge represented claimants to "let go of" their attorneys.

110.   Plaintiffs seek this Court to declare under 28 U.S.C. § 2201 that Defendants' (FEMA/NRCS') direct contact of represented claimants without counsel's involvement violates the New Mexico Rules of Professional Conduct, the ABA Annotated Model Rules of Professional Conduct, and the APA.

111.   Plaintiffs seek this Court to declare under 28 U.S.C. § 2201 that Defendants' (FEMA/NRCS') interference with the attorney-client relationship, to include but not limited to, submitting settlement offers

to represented claimants without their counsel's involvement is a violation of the New Mexico Rules of Professional Conduct.

112.  Plaintiffs seek this Court to declare under 28 U.S.C. § 2201 that Defendants' (FEMA/NRCS') to must immediately cease their practice of direct communication with represented claimants and cease any and all interference with the attorney-client relationship.

113.  Make such other and further declarations of law consistent with the New Mexico Code of Professional Conduct and the APA, 5 U.S.C.A. § 500.

## COUNT IV
## (Injunctive Relief)

114.  All foregoing paragraphs of this Complaint are realleged and incorporated herein by reference.

115.  Plaintiffs have unique statutory damages to their real property for which there is no adequate remedy at law, including the reforestation and revegetation of their property.

116.  Plaintiffs have entered into an attorney-client relationship with the undersigned counsel. The attorney-client relationship is a fiduciary relationship owned by the claimant/client.

117.   Interference with the attorney-client relationship by Defendants will cause the claimants to suffer irreparable harm and injury.

118.   The threatened injury to Plaintiffs' attorney-client relationship and/or the remediation of their unique real property under the HPFAA outweighs whatever damage the proposed injunction may cause to Defendants.

119.   The Defendants' violations of the state and federal rules of professional conduct and interference with the attorney-client relationship are adverse to the public interest. Without an injunction, Plaintiffs will suffer irreparable harm contrary to the prompt remedial purpose of HPFAA, which is adverse to the public interest.

120.   There is a substantial likelihood of success on the merits should Plaintiffs seek a preliminary injunction.

121.   Defendants should be enjoined from unauthorized contacts with represented claimants, including the presentment of settlement offers without advice of counsel.

122.   Defendants should be enjoined from interfering with claimants' directives that FEMA issue HPFAA settlement awards to New Mexico Supreme Court-approved IOLTA accounts.

123.   Defendants should be enjoined from interfering with the placement of HPFAA settlement proceeds into New Mexico Supreme Court created IOLTA accounts, because under 28 U.S.C. § 530B(a), the attorney-client relationship and IOLTA accounts are "subject to [New Mexico] State laws and rules." The New Mexico attorney-client relationship is governed by New Mexico state law and Government Defendants may not interfere with the attorney-client relationship.

124.   Defendants should be enjoined from any further unlawful conduct as alleged herein.

## PRAYER FOR RELIEF

Wherefore Plaintiffs respectfully request that this Court:

1.      Issue a declaratory judgment that the mandatory 180-day deadline under section 104(d)(1)(A)(i) of the HPFAA begins from the date a claimant submits its claim, not when FEMA "acknowledges" the claim;

2.      Issue a declaratory judgment that FEMA must immediately pay Plaintiffs' claims that exceed the 180-day deadline from the date of submission;

3.      Issue a declaratory judgment that FEMA must comply with the 180-day payment deadline mandated under section 104(d)(1)(A)(i) of the HPFAA;

4.      Issue a declaratory judgment that FEMA must appoint an experienced and competent claims administrator to ensure timely processing and payment of claims under the HPFAA;

5.      Issue a declaratory judgment that Defendants' (FEMA/NRCS') direct contact of represented claimants without counsel's involvement violates the New Mexico Rules of Professional

36

Conduct, the ABA Annotated Model Rules of Professional Conduct, and the APA;

6.    Issue a declaratory judgment that Defendants' (FEMA/NRCS') interference with the attorney-client relationship, to include but not limited to, submitting settlement offers to represented claimants without their counsel's involvement is a violation of the New Mexico Rules of Professional Conduct;

7.    Issue a declaratory judgment that Defendants' (FEMA/NRCS') to must immediately cease their practice of direct communication with represented claimants and cease any and all interference with the attorney-client relationship;

8.    Issue an order enjoining Defendants from violating the rules of professional conduct under federal and New Mexico law by contacting or communicating with represented HPFAA claimants;

9.    Issue a declaratory judgment that the Final Rule is arbitrary and capricious and/or not in accordance with law insofar as it refuses to issue payments into a New Mexico Supreme Court approved IOLTA account;

10.    Issue an order vacating and setting aside the portion of the Rule that refuses to issue payments into a New Mexico Supreme Court approved IOLTA account in accordance with the APA;

11.    For a declaration that HPFAA that under federal and state law HPFAA claimants may direct that the payments of their settlements may be made into a New Mexico Supreme Court approved IOLTA account, which does not violate the Anti-Assignment Act;

12.    For all other declaratory relief as set forth herein;

13.    Award Plaintiffs costs and reasonable attorney's fees; and

14.    Grant such other relief as the Court deems just and proper.

Dated: November 3, 2023         Respectfully submitted:
                                SINGLETON SCHREIBER, LLP

                                */s/ Benjamin I. Siminou*
                                Gerald B. Singleton
                                Benjamin I. Siminou
                                591 Camino de la Reina, Ste 1025
                                San Diego, CA 92108
                                (619) 704-3288
                                *gsingleton@singletonschreiber.com*
                                *bsiminou@singletonschreiber.com*

                                Brian Colón
                                Vern Payne
                                Jacob Payne
                                6501 Americas Pkwy. NE, Ste. 670

Albuquerque, NM 87110
(505) 587-3473
*bcolon@singletonschreiber.com*
*vpayne@singletonschreiber.com*
*jpayne@singletonschreiber.com*

Counsel for Plaintiffs MICHELLE
MONTOYA, CANDACE SEAVERNS,
JOSEPH SEAVERNS, SEAVERNS
FAMILY LIVING TRUST, SAM
ARTHUR, TAMARA FRASER,
GREGORY LUNGSTRUM, JUDITH
BUCKER-LUNGSTRUM, DANIEL
JOSLIN, VICKI JOSLIN, NORMA NIX,
MARY ANN FISHER, JAMES NIX,
ANTHONY BROTHERS, YVETTE
BROTHERS, KENNETH BACA, MARIA
ELENA BACA, DUANE OLLINGER,
LEON MARTINEZ, JOHN ELLIS III,
LYNNITA ELLIS, MANUAL CHACON,
MARY CHACON, CARLOS BUSTOS,
ELIZABETH BUSTOS, ELIZABETH
JONES, DEBORAH LEYBA, WILLIAM
ZAMORA, BENSON DURUAKU, ALVIN
MARTINEZ, WILLIAM ROBINSON

ROTHSTEIN DONATELLI LLP

*/s/ Marc M. Lowry*
Marc M. Lowry
500 4th St. NW, Ste. 400
Albuquerque, NM 87102
(505) 243-1443
*mlowry@rothsteinlaw.com*

Counsel for Plaintiffs TOBIN
DOLAN, LYDIA DOLAN, TANGEE
DOLAN, DOROTHY JONES